### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

FEDERAL TRADE COMMISSION,

      Plaintiff,

vs.                                                       No. CIV 07-352  JB

PAUL L. FOSTER,
WESTERN REFINING, INC.,
and GIANT INDUSTRIES, INC.,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Temporary Restraining Order, filed April 12, 2007 (Doc. 9). The Court held a hearing on the motion on April 13, 2007. The primary issue is whether Plaintiff Federal Trade Commission ("FTC") has demonstrated that the standards for a temporary restraining order are met here. Consistent with the Court's ruling at the hearing on this application, for the reasons given at the time of the hearing, and because the FTC has satisfied the standard required for a temporary restraining order to issue, the Court will **grant** the application for a temporary restraining order.

### FACTUAL BACKGROUND

Western Refining, Inc. is a publicly traded company headquartered in El Paso, Texas. Western owns and operates a single refinery in El Paso. From its refinery, Western provides petroleum products to El Paso, west Texas, Albuquerque, Tucson, Phoenix, and Juarez, Mexico. Western's parent entity is Paul L. Foster, who also serves on Western's Board of Directors, and is its President and Chief Executive Officer. Western supplies the northern New Mexico market through historic shipping rights on the Plains pipeline.

Giant Industries, Inc., is a publicly traded company headquartered in Scottsdale, Arizona. Giant is an independent refiner and marketer of petroleum products with one refinery in Yorktown, Virginia, and two refineries in the Four Corners region of New Mexico.

On August 26, 2006, Giant, Western, and a wholly-owned subsidiary of Western entered into an Agreement and Plan of Merger by which Western agreed to acquire all of the voting securities of Giant in exchange for approximately $83 per share, plus $275 million in assumed liabilities.

**LAW REGARDING TEMPORARY RESTRAINING ORDERS**

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) "provides for the grant of a preliminary injunction where such action would be in the public interest – as determined by a weighing of the equities and a consideration of the Commission's likelihood of success on the merits." FTC v. H.J. Heinz Co., 246 F.3d 708, 714 (D.C. Cir. 2001). Congress intended this standard to depart from what it regarded as the traditional equity standard, which it characterized as requiring the plaintiff to demonstrate: "[i] irreparable damage, [ii] probability of success on the merits and [iii] a balance of equities favoring the plaintiff." Id. (citing H.R. Rep. No. 93-624, at 31 (1971)). Congress determined that the traditional standard was not appropriate for an independent regulatory agency's implementation of a Federal statute where the standards of the public interest measure the propriety and the need for injunctive relief. See id. (citing H.R. Rep. No. 93-624, at 31). Agencies acting to enforce a federal statute are not held to the high thresholds applicable where private parties seek interim restraining orders. FTC v. Weyerhaeuser Co., 665 F.2d 1072, 1082 (D.C. Cir.1981). The FTC is not required to establish that the proposed transaction would in fact violation of Section 7 of the Clayton Act. See FTC v. H.J. Heinz Co., 246 F.3d at 714; FTC v. Food Town Stores, Inc., 539 F.2d 1339, 1342 (4th Cir. 1976)("The district court is not authorized to determine whether the

antitrust laws have been or are about to be violated.  That adjudicatory function is vested in the FTC in the first instance.").

To determine the likelihood of success on the merits, courts measure the probability that, after an administrative hearing on the merits, the FTC will succeed in proving that the effect of the proposed transaction "may be substantially to lessen competition, or to tend to create a monopoly," in violation of Section 7 of the Clayton Act.  FTC v. H.J. Heinz Co., 246 F.3d at 714.  The FTC satisfies its burden of showing the likelihood of success on the merits if it "raise[s] questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals."  FTC v. Beatrice Foods Co., 587 F.2d 1225, 1229 (D.C. Cir. 1978).  When the FTC demonstrates a likelihood of ultimate success, a counter-showing of private equities alone does not suffice to justify the denial of a preliminary injunction barring a merger.  See FTC v. Weyerhaeuser Co., 665 F.2d 1072, 1083 (D.C. Cir. 1981).

While the FTC's showing of likelihood of success creates a presumption in favor of preliminary injunctive relief, courts must still weigh the equities in order to decide whether enjoining the merger would be in the public interest.  FTC v. H.J. Heinz Co., 246 F.3d at 726.  The principal public equity weighing in favor of issuance of preliminary injunctive relief is the public interest in effective enforcement of the antitrust laws.  FTC v. University Health, Inc., 938 F.2d 1206, 1225 (11th Cir. 1991).  The Congress specifically had this public equity consideration in mind when it enacted section 13(b)  See FTC v. Food Town Stores, Inc., 539 F.2d at 1345-46.  Congress enacted Section 13(b) to preserve the status quo until the FTC can perform its statutory responsibility: determining whether, in fact, the effect of the transaction at issue "may be substantially to lessen

competition." See id.

## LAW REGARDING ANTI-COMPETITIVE MERGERS

Section 7 of the Clayton Act, 15 U.S.C. § 18, prohibits any transaction "where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. Section 7 seeks to forestall anti-competitive mergers "in their incipiency" before their effects occur; Section 7 thus requires a prediction about the merger's impact on future competition. See United States v. Phila. Nat'l Bank, 374 U.S. 321, 362 (1963).

> Section 7 does not require proof that a merger or other acquisition has caused higher prices in the affected market. All that is necessary is that the merger create an appreciable danger of such consequences in the future. A predictive judgment, necessarily probabilistic and judgmental rather than demonstrable is called for.

Hosp. Corp. of Am. v. FTC, 807 F.2d 1381, 1389 (7th Cir. 1986). With respect to anti-competitive effect, "the fact that prices might be lower than current prices after [a] merger does not mean that the merger will not have an anti-competitive effect[;] [c]onsumers would still be hurt if prices after the merger did not fall as far as they would have absent the merger." FTC v. Staples, Inc., 970 F. Supp. 1066 (D.D.C. 1997).

In determining whether a transaction is likely to impair competition, courts analyze: "[i] the "line of commerce" or product market in which to assess the transaction; [ii] the "section of the country" or geographic market in which to assess the transaction; and [iii] the transaction's probable effect on competition in the product and geographic markets." FTC v. Swedish Match N. Am., Inc., 131 F. Supp. 2d 151, 156 (D.D.C. 2000)(citing United States v. Marine Bancorp., 418 U.S. 602, 618-23 (1974)).

-4-

## ANALYSIS

The Court emphasizes that this hearing involves a request for a temporary restraining order, and is not a preliminary injunction hearing. To a considerable degree, the Court has to rely upon representations of what the evidence will be rather than on actual evidence. The Court has heard no expert testimony, and because of the late filing, the Court has not been able to thoughtfully review the submitted affidavits.

The Court has concerns whether the FTC is defining the market and region accurately, and whether it is including all the competitors that should be considered. While the Court is concerned that the evidence may not ultimately support a finding of anti-competitive results from the merger, there is some evidence that the merger will be anti-competitive. At this stage, the Court is not in a position to weigh the evidence. At the end of the day, the Court believes that there is a serious question, on the record before it, whether the effect of Western's proposed acquisition of Giant "may be substantially to lessen competition" for the bulk supply of gasoline and light petroleum products to northern New Mexico in violation of Section 7 of the Clayton Act and Section 5 of the FTC Act. 15 U.S.C. § 18.

The Court believes that the FTC's strongest argument is that Western competes with Giant by providing bulk supplies of light petroleum products to northern New Mexico at Albuquerque prices via the Plains pipeline. While the Court has not had time to fully digest the FTC's recent Aloha Petroleum, Inc. case, the Court is tentatively persuaded that Western is a participant in the Albuquerque market, even though it does not own a terminal in Albuquerque. By acquiring Giant, Western would increase, perhaps significantly, its share of the bulk supply of light petroleum products to northern New Mexico and reduce the number of competitors that could respond to an output

decrease or price increase in the market. In the bulk gasoline market, Western's acquisition of Giant would reduce the number of such competitors. An acquisition that increases the degree of market concentration in a concentrated market suggests that the acquisition will harm competition.

The FTC's Exhibit 5 is styled "New Mexico Crude Oil Pipeline Fact Sheet" and indicates that Giant prepared the document. The document indicates that Giant believes additional product marketed to Albuquerque and Santa Fe will spur price competition. The fact sheet states: "Price Competition. Additional production of petroleum products will help spur price competition in northern New Mexico markets, including Albuquerque and Santa Fe." Exhibit 5. With the addition of the 400 mile Jal pipeline to Giant's assets, there is the possibility that Giant may bring its refinery near Gallup to capacity and then supply more petroleum products to the Albuquerque area.

The Court believes this evidence, when considered with Exhibit 6, gets the FTC to where it needs to be to secure a temporary restraining order. While the Defendants vigorously dispute that the Court can even consider Exhibit 6, someone at Giant generated this document to show Giant's incremental supply marketing after the potential mid-2007 utilization increase. The document reflects that the prices in the Albuquerque/Santa Fe area could drop in the six to eight percent range, which would translate to a savings of about $7 million dollars to those consumers. While the Court has many questions about this document, including its admissibility against Giant, it is some evidence that, if the merger does not proceed, prices in the Albuquerque/Santa Fe could decline merely from greater utilization of the Giant refinery.

The FTC has also presented argument and charts that indicate that the other competitors in the market do not have the ability to increase their volume of product to the Albuquerque/Santa Fe market. The conclusion from this representation is that an increase in price by the Giant/Western

merger could put the enlarged competitor in a position of decreasing product for the region and thus increasing cost, because competitors could not increase their supply in the area. While the Court is reluctant to say, on the record before it, that the merger would create a combined firm able to in any way dominate northern New Mexico, the Court does think this evidence shows that the merger has the possibility of lessening competition.

The FTC has demonstrated that, as a result of the merger, Giant, which would otherwise likely increase its potential and actual supply of light petroleum products to the northern New Mexico market, may end up re-directing supply away from that market, because a combined Western/Giant firm would be susceptible to the economic incentives and mechanisms that presently lead Western to direct its supply elsewhere. The FTC has also shown, based on historical market trends, that the remaining competitors in the market are unlikely to expand output to counter any supply reduction the Western/Giant merger may create. The FTC has further demonstrated that, even if the merger leads to an actual increase in the supply of light petroleum products to the market, the resulting increase would not equal the supply that Giant would likely provide if it did not merge. "[T]he fact that prices might be lower than current prices after the merger does not mean that the merger will not have an anti-competitive effect. Consumers would still be hurt if prices after the merger did not fall as far as they would have absent the merger." FTC v. Staples, Inc., 970 F. Supp. at 1092.

The Defendants have brought a number of arguments, some with considerable force, before the Court that the merger will not reduce competition in the Albuquerque and surrounding areas. The problem for the Defendants is that the standard for receiving a temporary restraining order is not that great. The Court believes that, today, it must find whether there is a serious question and, if so, set the matter for a hearing on the request for a preliminary injunction.

The Court does not believe that the equities override the FTC's showing of possible anti-competitive effects from the merger.  The equities point in different and conflicting directions.  In the end, the Court believes that it is in the public's interest to consider more thoroughly the possible anti-competitive effects of the merger and maintain the status quo until that can be done.

**IT IS ORDERED** that the Plaintiff's Motion for a Temporary Restraining Order is granted. Defendants Paul L. Foster and Western Refining, Inc., including its domestic and foreign agents, divisions, subsidiaries, affiliates, partnerships, and joint ventures, are enjoined from acquiring any stock, assets, or other interest, directly or indirectly, from Defendant Giant Industries, Inc.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Thomas J Lang
Federal Trade Commission
Washington, D.C.

     *Attorney for Plaintiff*

Andrew G. Schultz
Henry M. Bohnhoff
Patrick Shay
Thomas A. Outler
Rodey, Dickason, Sloan, Akin, & Robb, P.A.
Albuquerque, New Mexico

-- and --

Marc G. Schildkraut
Michael P.A. Cohen
Heller Erhman LLP
Washington, D.C.

     *Attorneys for Western Refining, Inc.*

Andrew G. Schultz
Henry M. Bohnhoff
Patrick Shay
Thomas A. Outler
Rodey, Dickason, Sloan, Akin, & Robb, P.A.
Albuquerque, New Mexico

-- and --

Tom D. Smith
Jones Day
Washington, D.C.

-- and --

Hugh R. Whiting
Jones Day
Houston, Texas

*Attorneys for Giant Industries, Inc.*