**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FEDERAL TRADE COMMISSION,

    Plaintiff,

vs.                                                                                              No. CIV 07-532 JB/ACT

PAUL L. FOSTER and
WESTERN REFINING,

    and

GIANT INDUSTRIES, INC.

    Defendants.

**MEMORANDUM OPINION AND ORDER**[1]

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Protective Order, filed April 12, 2007 (Doc. 8); and (ii) the Plaintiff's Corrected Motion for Protective Order, filed April 19, 2007 (Doc. 67). The Court held hearings on the motions on April 13, 2007 and April 23, 2007. The primary issue is whether the Court should prohibit, via protective order, the General Counsels of Defendants Western Refining, Inc. ("Western") and Giant Industries, Inc. ("Giant") from accessing confidential discovery material that Plaintiff Federal Trade Commission ("FTC") possesses. Because the Court believes that a protective order is warranted, and that one balancing the needs of Western and of Giant for information against the injury that may result from disclosure can be fashioned, the Court will adopt the Proposed Protective Order under which the parties have been laboring except insofar as its language enjoins Western's and Giant's General Counsels from

---

[1] The Court does not believe that this Memorandum Opinion and Order contains any sensitive information requiring filing under seal. If the parties would prefer that the filing be sealed, they may contact the Court and make that request.

viewing confidential discovery materials the FTC holds

## **FACTUAL BACKGROUND**

Capable outside counsel represents the Defendants.  See Clerk's Minutes, filed April 13, 2007 (Doc. 36).  The Defendants' General Counsels are officers of their respective corporations. See Plaintiff's Corrected Response in Support of Plaintiff's Motion for a Protective Order at 6, filed April 22, 2007 (Doc. 99)("Plaintiff's Response").  Western's General Counsel, Lowry Barfield, is a Vice President and Secretary of Western.  See id.  Kim Bullerdick, Giant's General Counsel, is a Senior Vice President and Secretary of Giant.  See id.  Western's legal department consists of Mr. Barfield and one relatively young attorney.  See Hearing Transcript at 4:7-9 (Smith)(taken April 23, 2007)("April 23 Transcript").[2]  Giant's legal department consists of Mr. Bullerdick and three other attorneys.  See id. at 4:10-14 (Smith).  Because both Mr. Barfield and Mr. Bullerdick are corporate officers, each presumably owes a fiduciary duty to his company that goes beyond the law to other aspects of their businesses.

Certain documents have suggested to the FTC that Mr. Barfield engages in "competitive decision making."  Submissions PX00017, PX00018, and PX00019 are e-mails from Mr. Barfield's file. See Appendix to Plaintiff's Corrected Response in Support of Plaintiff's Motion for Protective Order to Cure Deficiency in Document 54 Noticed to Plaintiff in Document 57, filed April 21, 2007 (Doc. 98)("Plaintiff's Appendix"), PX00017, E-mail from Mike Whentley to Lowry Barfield, Paul Foster, Jeff Stevens, Scott Weaver, and Ralph Schmidt (dated November 4, 2005)("PX00017"); id. PX00018, E-mail from Gary Dalke to Lowry Barfield (dated August 19, 2006)("PX00018"); id. PX00019, E-mail from Leroy Crow to Lowry Barfield (dated October 6, 2006)("PX00019").

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

PX00017 is an e-mail addressed to Mr. Barfield and others, discussing a possible pipeline venture and soliciting "any other finished product ideas." PX00017. PX00018 is an e-mail addressed to Mr. Barfield discussing capital expenditures. See PX00018. PX00019 is an e-mail addressed to Mr. Barfield, describing facilities inspection and construction progress. See PX00019.

The FTC's investigation has resulted in the production of sensitive and confidential information. See Plaintiff's Corrected Memorandum in Support of Motion for Protective Order at 1, filed April 19, 2007 (Doc. 68)("Plaintiff's Memo"). The Defendants have submitted documents and information pursuant to requests under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a. See id. at 3. Both Western and Giant have indicated that most of the documents submitted contain confidential material unknown to their competitors and the public in general. See id. Similarly, third parties have submitted and may be asked to submit additional information to the FTC that is relevant to this case and that contains non-public, competitively sensitive material. See id.

## PROCEDURAL BACKGROUND

On April 12, 2007, the FTC filed a Complaint seeking a temporary restraining order and a preliminary injunction halting Western's acquisition of Giant to preserve the competitive status quo while the FTC conducts an administrative proceeding to determine whether the transaction would violate antitrust laws. See Complaint for Temporary Restraining Order and Preliminary Injunction Pursuant to Section 13(b) of the Federal Trade Commission Act ("FTCA") at 1-2, filed April 12, 2007 (Doc. 1)("Complaint"). The FTC represents that it has reason to believe that such acquisition would violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and Section 7 of the Clayton Act, 15 U.S.C. § 18. See Complaint at 4, 11.

The FTC's Complaint was filed pursuant to a Stipulated Interim Protective Order designed

to protect competitively sensitive commercial information, especially that of third parties.  See Plaintiff's Motion for Protective Order, filed April 12, 2007 (Doc. 8)("Motion for Protective Order"), Stipulated Interim Protective Order (dated April 12, 2007)("Stipulated Order").  In accordance with D.N.M. LR-Civ. 7.1(a), the FTC represents that it discussed its Motion for a Protective Order with opposing counsel, and that the Defendants advised they would not oppose the motion.  See Motion for Protective Order at 1-2.  The FTC moves the Court, pursuant to rule 26(c) of the Federal Rules of Civil Procedure, for a protective order preserving the confidentiality of information that the Defendants or third parties have provided, or will be providing, to the FTC, and that the FTC has provided, or will be providing, to the Defendants.  See Motion for Protective Order at 1.  The FTC submitted a proposed order with its request for a protective order.  See Stipulated Order.

In the Stipulated Interim Protective Order, counsel for the parties agree that they will abide by the terms of the Proposed Protective Order appended to the Stipulation, unless and until such time as the Court enters a protective order.  See id. at 1.  The Stipulation also states that it shall not prejudice the Defendants from opposing or seeking modification of any of the provisions of the protective order, and that it is intended only to secure confidentiality for documents related to this litigation pending the Court's acting on the Motion for Protective Order.  See id.  Thomas J. Lang, counsel for the FTC, Marc D. Schildkraut, counsel for Defendants Paul L. Foster and Western, and Tom D. Smith, counsel for Defendant Giant signed the Stipulated Interim Protective Order adopting the Proposed Protective Order on April 12, 2007, the day that it was submitted to the Court.  See id. at 1-3.

Under the Proposed Protective Order, "Confidential Discovery Material" is "non-public trade secret or other research, development or commercial information, the disclosure of which would

likely cause commercial harm to the Producing Party." Stipulated Order, Proposed Protective Order ¶ 4, at 2. The Proposed Protective Order includes the following examples of Confidential Discovery Material:

> strategic plans (involving pricing, marketing, research and development, corporate alliances, or mergers and acquisitions) that have not been fully implemented or revealed to the public; trade secrets; customer-specific evaluations or data (e.g., prices, volumes, or revenues); sales contracts; system maps; personnel files and evaluations; information subject to confidentiality or non-disclosure files and evaluations; information subject to confidentiality or non-disclosure agreements; proprietary technical or engineering information; proprietary financial data or projections; and proprietary consumer, customer, or market research or analyses applicable to current or future market conditions, the disclosure of which could reveal Confidential Discovery Material.

Id. ¶ 4 at 2-3. Pursuant to the Proposed Protective Order, each corporate defendant may give Confidential Discovery Material to one in-house counsel who "does not have any influence over the direction of [that company's] business or its operations (in addition to outside counsel and experts or consultants retained to assist in this action)." Stipulated Order, Proposed Protective Order ¶ 8, at 9.

Specifically with regard to in-house counsel, paragraph 8 of the Proposed Protective Order provides that Confidential Discovery Material is not to be provided to any person except "one in-house counsel designated by Western who does not have any influence over the direction of Western's business or its operations," and "one in-house counsel designated by Giant who does not have any influence over the direction of Giant's business or its operations . . ." Id. ¶ 8, at 8. Paragraph 9 of the Proposed Protective Order states that, if any party desires to disclose Confidential Discovery Material to in-house counsel for Western or for Giant not designated in paragraph 8 of the protective order, the disclosing party shall notify the producing party of its desire to disclose such Confidential Discovery Material. See id. ¶ 9, at 9. Paragraph 9 allows the producing party to

-5-

object to the disclosure of the Confidential Discovery Material within five days of receiving notice of an intent to disclose such material.  <u>See</u> <u>id.</u> ¶ 9, at 10.  If the producing party timely objects, the disclosing party shall not disclose the Confidential Discovery Material to the identified person, absent a written agreement with the producing party or Court order permitting disclosure.  <u>See</u> <u>id.</u>  The Proposed Protective Order also permits any party to ask the Court to enter a protective order with different terms.  <u>See</u> <u>id.</u> ¶ 18, at 14.

The FTC requests that the Court issue an advance ruling in the form of the Proposed Protective Order.  <u>See</u> Motion for Protective Order, Plaintiff's Memorandum in Support of Motion for Protective Order at 2 ("Plaintiff's Protective Order Memo").  The FTC requests that the Court enter the Proposed Protective Order to expedite the litigation of the case, to protect the parties' ability to secure and use confidential information in an appropriate matter, and to protect the interest of the Defendants and third parties against inappropriate disclosure of confidential material.  <u>See</u> <u>id.</u> at 3-4.

On April 13, 2007, the Court granted the FTC's request for a Temporary Restraining Order.  <u>See</u> Memorandum Opinion and Order at 1, 8, filed April 13, 2007 (Doc. 37).  On April 16, 2007, the Court set the hearing on the FTC's request for Preliminary Injunction for May 7, 2007.  <u>See</u> Hearing Transcript at 10:10 (Court)(taken April 16, 2007)("April 16 Transcript").

On April 16, 2007, the Defendants also orally moved to amend the Proposed Protective Order so that their General Counsels could access confidential information.  <u>See</u> <u>id.</u> at 14:17-16:4 (Smith).  At that time, the Court indicated that it was inclined to grant the Defendants' request, <u>see</u> <u>id.</u> at 17:20-21 (Court),  but the parties requested to serve simultaneous briefing within forty-eight hours, <u>see</u> <u>id.</u> at 18:4-12 (Lang), <u>id.</u> at 18:15-19 (Smith).  Both parties filed their briefs on the issue on April 18, 2007.  <u>See</u> Plaintiff's Response in Opposition to Defendants' Motion to Amend the

Protective Order, filed April 18, 2007 (Doc. 53); Defendants' Memorandum in Opposition to Plaintiff's Motion for Protective Order, filed April 18, 2007 (Doc. 55)("Defendants' Opposition Memo").

The FTC opposes the Defendants' suggested amendments to paragraphs 8(c) and 8(d), which would appear to allow the General Counsels of Western and Giant to access all confidential discovery material produced in this litigation, including sensitive commercial information that the Defendants' competitors have supplied. See Plaintiff's Response at 4. The Defendants assert that the full participation of their General Counsels is essential to their defense. See Defendants' Opposition Memo at 1-2. They also submit that Mr. Bullerdick and Mr. Barfield, in particular, are experienced litigators, who will play a significant role in defending the contested transaction. See April 16 Transcript at 15:2-11 (Smith). Western and Giant also represent that Mr. Barfield and Mr. Bullerdick have no involvement in the competitive decision making of their companies. See Defendants' Opposition Memo at 2-3.

At the April 23, 2007 hearing on the filings relating to the Motion for Protective Order, Western and Giant represented that Mr. Barfield and Mr. Bullerdick would submit affidavits to the Court attesting that they do not take part in competitive decision making. See April 23 Transcript at 5:9-13 (Smith). Further, at the hearing, Western and Giant stated that they seek to allow their General Counsels access to only deposition transcripts, transcripts of the FTC's investigative hearings, and un-redacted pleadings -- not the actual documents produced to the FTC. See id. at 10:22-11:2.

On April 24, 2007, Mr. Barfield and Mr. Bullerdick submitted affidavits stating that they are not involved in the competitive decision making of their companies. See Affidavit of Kim Bullerdick in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion for

Protective Order ¶ 3, at 1-2, filed April 24, 2007 (Doc. 118)("Bullerdick Affidavit"); Affidavit of Lowry Barfield in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Protective Order ¶ 3, at 1, filed April 24, 2007 (Doc. 119)("Barfield Affidavit").

### **FTCA**

Section 21(d)(2) of the FTCA provides:

> Any disclosure of relevant and material information in Commission adjudicative proceedings or in judicial proceedings to which the Commission is a party shall be governed by the rules of the Commission for adjudicative proceedings or by court rules or orders, except that the rules of the Commission shall not be amended in a manner inconsistent with the purposes of this section.

15 U.S.C. § 57b-2(d)(2). In furtherance of the requirements of Section 21, the FTC promulgated Rule 4.10(g). See 16 C.F.R. § 4.10(g)(1996). Rule 4.10(g)(3) provides that a person submitting confidential information to the FTC will be "afforded an opportunity to seek an appropriate protective or in camera order" before the disclosure of such documents in court proceedings. See id.

### **RULE 26(c)(7)**

Rule 26(c)(7) permits a court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way . . . ." Fed. R. Civ. P. 26(c)(7). Rule 26 creates a presumption of openness in discovery matters, and "it is well established that there is no absolute privilege for trade secrets or similar confidential information." Sears v. Nissan Motor Co., Ltd., No. 90-2169, 1991 WL 80741, at *2 (10th Cir. May 16, 1991).

> To resist discovery under Rule 26(b)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking

> discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure.

Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir. 1981). Generally, in determining whether to require disclosure, a court should weigh the competing interests involved within the context of the total situation and consider factors such as the dangers of abuse, good faith, adequacy of protective measures, and the availability of other means of proof. See id. at 326 n.6.

> It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion.

Id. at 326.

With respect to distinguishing between outside and in-house counsel in protective orders that seek to guard against the disclosure of competing companies' confidential information, an important factor is whether the in-house counsel is involved in "competitive decision making." Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992)(citing U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984))(affirming a district court's upholding of a magistrate's protective order denying in-house counsel access to a competitor's confidential information where the in-house counsel was involved in competitive decision making and outside counsel had over six months to review the sensitive information to which the in-house counsel was not privy). Competitive decision making encompasses "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." Glaxo Inc. Genpharm Pharm, Inc., 796 F. Supp. 872, 874 (E.D.N.C. 1992)(quoting U.S. Steel Corp. v. United States, 730 F.2d  at 1468)(internal quotations

omitted).  See Akzo v. U.S. Int'l Trade Comm'n, 808 F.2d 1471, 1482-83 (Fed. Cir. 1986)(reviewing administrative law and upholding an administrative law judge's protective order denying in-house counsel access to confidential information about a competitor company where the party to which in-house counsel belonged failed to demonstrate that the information sought was needed).  "[I]n-house counsel stand in a unique relationship to the corporation in which they are employed.  Although in-house counsel serve as legal advocates and advisors for their client, their continuing employment often intimately involves them in the management and operation of the corporation of which they are a part."  Fed. Trade Comm'n v. Exxon Corp., 636 F.2d 1336, 1350 (D.C. Cir. 1980)(finding that the district court did not abuse its discretion when it did not allow in-house counsel access to the competitively sensitive information of a subsidiary subject to divestment).

In Carpenter Tech. Corp. v. Armco, Inc., 132 F.R.D. 24 (E.D. Penn. 1990), the Honorable Daniel H. Huyett III, United States District Court Judge for the Eastern District of Pennsylvania, considered whether in-house counsel could have access to a competitor's confidential information. See id. at 27-29.  Judge Huyett held that a senior staff attorney, who was not an officer or a director, was not related, by blood or marriage, to an officer or employee of the company, and who submitted an affidavit to the court stating that he was not involved in competitive decision making, could have access to the information in question.  See id. at 27-28.  Judge Huyett also ruled, however, that the Director of Law, who was an officer, was not a director, was not related, by blood or marriage, to another officer or company employee, and who filed an affidavit with the court declaring that he had no "direct" involvement in competitive decision making, was barred from accessing the information sought.  Id. at 28.

In Glaxo Inc. v. Genpharm Pharm, Inc., the Honorable Terrence William Boyle, United

States District Judge for the Eastern District of North Carolina, overruled a magistrate's protective order denying one of the party's in-house counsel access to confidential materials obtained from the opposing party through discovery.  See id. at 874.  The magistrate had barred the in-house counsel from accessing the information in question on the grounds that he was a high-level employee and substantial investor in the party-company, his company had retained three outside law firms that could provide adequate representation, and that the opposing party had no in-house counsel.  See id.  Judge Boyle held that the in-house counsel, who was a member of three different bars and attested in two un-controverted affidavits that he had no involvement in competitive decisions involving  pricing, scientific research, sales, or marketing, could access the opposing party's confidential materials.  See id.

## ANALYSIS

The Court believes that the nature of the confidential discovery materials in this case warrants a protective order.  The Court also concludes that it can craft one that balances the need of Western and Giant for information against the injury that may result from disclosure.  Accordingly, the Court will modify the Proposed Protective Order to allow Western's and Giant's General Counsel, subject to meeting certain conditions, to access certain categories of the confidential discovery information.

**I.      THE COURT WILL ENTER A PROTECTIVE ORDER IN THIS CASE.**

The confidential information at issue here includes competitors' cost data, customer lists, prices, and volumes sold.  See Affidavit of Bradley Barron, General Counsel, NuStar Energy, L.P. ¶ 5, at 1 (executed April 18, 2007); Declaration of Thomas D. Carmel, Senior Counsel, Conoco Phillips ¶ 3, at 1 (executed April 18, 2007); Declaration of Darby L. Reid, Senior Manager, Valero Energy Corporation ¶ 3, at 1 (executed April 18, 2007).  Under rule 26(c)(7), such information fits

within categories of information that may be protected.  See American Standard, Inc.v. Pfizer, Inc., 828 F.2d 734, 740 (Fed. Cir. 1987)(stating that confidential information includes trade secrets and marketing plans); Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697 (D. Nev. 1994)(holding that confidential information includes that which would cause substantial economic harm to the competitive position of the producer); Fed. R. Civ. P. 26(c)(7).  The parties do not dispute the harm that disclosure of competitively sensitive information to competitors can inflict on a business.

Litigation of this case may require that all parties engage in discovery of confidential material in the possession of third parties and may require the disclosure of confidential material to the Court.  The FTC represents that, in litigating similar cases, it has found that courts frequently receive several requests for protective orders pursuant to rule 26(c), 15 U.S.C. § 57b-2(d)(2), and 16 C.F.R. § 4.10(g).  In the interests of efficiency and fairness to the Defendants and to all third parties who have provided or may provide competitively sensitive information, the FTC seeks this relief to establish a uniform procedure to safeguard certain confidential material that the parties to this litigation have discovered or will discover.  There is no doubt that such an order would alleviate the burden on the Court to respond to numerous requests for orders protecting confidential information on a case-by-case basis, and effect a more orderly discovery process.

The proposed order seeks to ensure, to the extent possible, that matters raised in this proceeding will be open to the public, while simultaneously limiting the number of persons who have access to the confidential information generated during the discovery phase of the litigation and providing a mechanism for the proper dissemination of discoverable documents.  Furthermore, such material submitted by the Defendants, as well as material submitted by third parties, may be entitled to confidential treatment under Sections 6(f) and 21 of the FTC Act, 15 U.S.C. §§ 46(f),

57b-2.

The Court will adopt the Proposed Protective Order subject to the amendments introduced below.

## II. THE COURT WILL AMEND THE FTC'S PROPOSED PROTECTIVE ORDER TO ALLOW WESTERN'S AND GIANT'S GENERAL COUNSEL LIMITED ACCESS TO SOME CONFIDENTIAL INFORMATION.

The FTC seeks a protective order that would bar Mr. Barfield and Mr. Bullerdick from viewing confidential discovery materials. See Plaintiff's Response at 2. The FTC asserts that it is crucial that this information remain confidential and unexploited, because, if it is used to gain competitive advantage, companies will be reluctant to provide information to the FTC in the future. See Plaintiff's Response at 9-10.

Western and Giant assert that it is essential to their defense that their General Counsels have access to the confidential discovery material in this case. See Defendants' Opposition Memo at 1. Western and Giant contend that Mr. Barfield and Mr. Bullerdick are responsible for advising their management on litigation strategy, and that they cannot do so without full access to relevant information. See id. at 2. They also represent that Mr. Barfield is an experienced commercial litigator who desires to take a leading role in this litigation. See April 23 Transcript at 9:14-24. Western and Giant concede that the discovery materials should be subject to protection and that they should remain confidential. See id. at 1. Western and Giant seek only limited access to information for their General Counsels: they seek to allow Mr. Barfield and Mr. Bullerdick access to deposition transcripts, transcripts of FTC investigative hearings, and un-redacted pleadings, see April 23 Transcript at 10:22-11:2, in their outside counsels' office(s) in a manner that would allow them to take notes but not remove the notes from the outside counsels' office(s), see Defendants' Opposition Memo at 1. The Court finds that the limited nature of this request substantially lessens the danger

that Western and Giant will be able to view, yet alone use, any information that could provide them advantages over their competitors.  Moreover, addressing the issue of in-house counsel and competitive decision making, Western and Giant represent that Mr. Barfield and Mr. Bullerdick do not take part in competitive decision making, see Defendants' Opposition Memo at 2-3, and Mr. Barfield and Mr. Bullerdick have submitted affidavits to the Court affirming that representation, see Barfield Affidavit ¶ 3, at 1; Bullerdick Affidavit ¶ 3, at 1-2.

The FTC presents three e-mail communications, PX00017, PX00018, and PX00019, to dispute the assertion that Mr. Barfield is not involved in competitive decision making.  The Defendants respond that those three e-mails were the only ones out of approximately 900,000 documents submitted to the FTC that indicate that Mr. Barfield may have a role in competitive decision making at Western.  April 23 Transcript at 8:6-11.  Further, the Defendants represent that PX00017 was simply a solicitation of interest sent to multiple parties, and that PX00018 and PX00019 related to due diligence concerning the Giant transaction.  See id. at 8:11-24.  The Court finds that the number and nature of the communications the FTC submits do not override the declarations regarding competitive decision making contained in the affidavits of Mr. Barfield and Mr. Bullerdick.

Acknowledging that it is within the trial Court's discretion to determine which safeguards are appropriate for protecting commercial information, see Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d at 326,  recognizing the FTC's significant interest in safeguarding information cooperating companies give it and the significant interest the Defendants have in putting on the strongest defense they can, because the FTC has not demonstrated that harm will result from allowing the limited access to confidential information that Western and Giant seek, because Western and Giant have shown that their defense would be prejudiced if their General Counsels

were prohibited from providing them with well-informed strategic legal advice, noting that Western's and Giant's in-house counsel are limited in number, and because Mr. Barfield and Mr. Bullerdick attest that they do not take part, directly or indirectly, in their companies' competitive decision making, the Court will adopt the Proposed Protective Order after amending paragraphs 8(c) and 8(d) to balance Western's and Giant's need for information with the FTC's concern for potential harm from the disclosure of confidential competitive information.

Based on the foregoing, and based upon Mr. Barfield's and Mr. Bullerdick's entering affidavits declaring of which bars they are members and remaining subject to the Court's jurisdiction at all times, including after the case is concluded, the Court will amend paragraphs 8(c) and 8(d) to read:

    (c)    Lowry Barfield, General Counsel of Western Refining, Inc., who may have access to confidential deposition transcripts, transcripts of FTC investigative hearings, and un-redacted pleadings, without exhibits, in the office(s) of Western's outside counsel, and who may take notes regarding such material but may not remove these notes from the office(s) of Western's outside counsel;

    (d)    Kim Bullerdick, General Counsel of Giant Industries, Inc., who may have access to confidential deposition transcripts, transcripts of FTC investigative hearings, and un-redacted pleadings, without exhibits, in the office(s) of Giant's outside counsel, and who may take notes regarding such material but may not remove these notes from the office(s) of Giant's outside counsel;

**IT IS ORDERED** that the Plaintiff's Motion for Protective Order and the Plaintiff's Corrected Motion for Protective Order are granted in part and denied in part. The Court adopts, based on Mr. Barfield's and Mr. Bullerdick's agreeing to meet the terms stated herein, the Proposed Protective Order with the stated amendments to paragraphs 8(c) and 8(d). Mr. Barfield and Mr. Bullerdick must enter affidavits listing the bar(s) of which they are members, acknowledge that the are subject to the Court's contempt powers, and agree to remain subject to the Court's jurisdiction

at all times, including after the case is concluded. Mr. Barfield and Mr. Bullerdick are also instructed not to use the confidential information, directly or indirectly, for any purpose other than defending against this lawsuit.

                                                                                       UNITED STATES DISTRICT JUDGE

*Counsel*:

Deyonna Young
  Assistant Attorney General
  Special Deputy to the Federal Trade
    Commission
Litigation Division (Antitrust)
Office of the New Mexico Attorney General
Albuquerque, New Mexico

-- and --

Thomas J. Lang
  Senior Litigation Counsel
Bureau of Competition
Federal Trade Commission
Washington, D.C.

      *Attorneys for the Plaintiff*

Henry M. Bohnhoff
Andrew G. Schultz
Thomas A. Outler
Patrick Shay
Rodey, Dickason, Sloan, Akin
  & Robb, P.A.
Albuquerque, New Mexico

      *Attorneys for the Defendants*

Lowry Barfield
General Counsel
Western Refining, Inc.
El Paso, Texas

-- and --

Marc G. Schildkraut
Michael P.A. Cohen
Heller Ehrman, LLP
Washington, D.C.

> *Attorneys for Defendants Paul L. Foster*
> *and Western Refining, Inc.*

Kim H. Bullerdick
General Counsel
Giant Industries, Inc.
Scottsdale, Arizona

-- and --

Hugh R. Whiting
Tom D. Smith
Jones Day
Houston, Texas
Washington, D.C.

> *Attorneys for Defendant Giant Industries, Inc.*